BRANDT et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. August 12, 1912.)

No. 3,589.

1. PUBLIC LANDS (§ 120*)—SUIT FOR CANCELLATION OF PATENT—FRAUD—EVIDENCE.

What constitutes such fraud as will invalidate a homestead entry is a matter to be determined from the facts and circumstances of each particular case.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. § 120.*]

2. APPEAL AND ERROR (§ 1009*)—REVIEW—SUIT FOR CANCELLATION OF PATENT—FRAUD—CONCLUSIVENESS OF FINDING.

Findings by a Circuit Court, on conflicting evidence, that a homestead entry was fraudulent, and that subsequent purchasers bought with notice of it, are presumptively right, and will not be disturbed by an appellate court, unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970–3978; Dec. Dig. § 1009.*]

Appeal from the Circuit Court of the United States for the District of Wyoming.

Suit in equity by the United States against Samuel Brandt, William H. Bonsell, and Sarah R. Henry. Decree for complainant, and certain defendants appeal. Affirmed.

William B. Ross, for appellants.

Timothy F. Burke, U. S. Atty. (William A. Riner, Asst. U. S. Atty., on the brief), for the United States.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

REED, District Judge. This suit is by the government to set aside and cancel a patent to 160 acres of land in Converse county, Wyo., issued to the defendant Samuel Brandt, February 25, 1904, upon a commutation of a homestead entry made by him upon the land, upon the ground of the alleged fraud of said Brandt in making such entry and in procuring such patent.

From the record it appears that on October 12, 1900, the defendant Samuel Brandt, a citizen of the United States, made application in the proper land office in Wyoming under sections 2289, 2290, of the Revised Statutes of the United States, as amended, for a homestead entry upon 160 acres of the public lands of the United States, subject to homestead entry, situated in Converse county, in that state, and received from the receiver a receipt evidencing such entry. On making such application Brandt made and subscribed to the required affidavit, which he filed with the land office, as follows:

"That my said application is honestly and in good faith made for the purpose of actual settlement and cultivation, and not for the benefit of any other

person, persons, or corporation, and that I will faithfully and honestly endeavor to comply with all the requirements of law as to settlement, residence, and cultivation necessary to acquire title to the land applied for; that I am not acting as agent of any person, corporation, or syndicate in making such entry, nor in collusion with any person, corporation, or syndicate to give them the benefit of the land entered, or any part thereof, or the timber thereon; that I do not apply to enter the same for the purpose of speculation, but in good faith to obtain a home for myself; and that I have not directly or indirectly made, and will not make, any agreement or contract in any way or manner, with any person or persons, corporation, or syndicate whatsoever, by which the title which I might acquire from the Government of the United States should inure, in whole or in part, to the benefit of any person except myself."

April 26, 1902, Brandt claimed that a mistake had been made in the description of one 40-acre tract of the land described in his entry, and filed in the proper land office an application to correct the same, which application was supported by his own affidavit and by that of the defendant Bonsell. The application was granted, and the entry corrected to describe the land which Brandt claimed was actually entered by him.

May 9, 1903, Brandt filed with the land office notice of his intention to make final proof on June 20, 1903, of his entry upon and cultivation of said land, and of his intention to pay the minimum price therefor, under section 2301 of the Revised Statutes, as amended, which notice was duly published as required by law. On said June 20, 1903, such proof was made by him before the proper land office pursuant to said notice, and in giving his testimony he was asked: "Have you sold, conveyed, or mortgaged any portion of the land, and if so to whom and for what purpose?" To which he answered: "I have not." He also made and subscribed to the final affidavit required of homestead claimants, in which he said: "I am the sole bona fide owner as an actual settler upon said land." He then paid to the receiver $200, as the purchase price of said land at $1.25 per acre and received from him a receipt therefor, and from the register a certificate that he had purchased the land and was entitled to a patent therefor; and a patent was accordingly issued to him for the land on February 25, 1904.

It is alleged by the government that the entry of and payment for said land by Brandt was not made by him in good faith for his own benefit and for the purpose of acquiring the same as a home for himself, but was made at the instance of the defendant Bonsell, and for the purpose of acquiring the land for him (Bonsell), and that he (Brandt) was to receive and did receive from Bonsell the sum of $150, in addition to the $200 advanced by Bonsell and paid by Brandt for the land; that on July 6, 1903, Brandt by warranty deed conveyed the land to Bonsell for the recited consideration of $400; that on April 18, 1904, Bonsell and wife mortgaged the land, together with other lands and certain personal property, to the defendant Sarah R. Henry, who was the aunt of Bonsell, for the recited consideration of $20,000; that the defendant Henry knew the circumstances under which the land was acquired by Brandt and conveyed to Bonsell; and that she was not a good-faith holder of the land under said mortgage.

The defendants Bonsell and Henry answered the bill of complaint,

and denied that the property was wrongfully or fraudulently acquired by Brandt for the benefit of Bonsell, and averred that the defendant Bonsell was a good-faith purchaser thereof from Brandt, and that the mortgage to Mrs. Henry was made in good faith, and that she had no knowledge of any wrongful or fraudulent practices upon the part of Brandt or Bonsell in acquiring the land, if any there were.

Brandt did not answer the bill, and it was taken pro confesso, and a decree entered setting aside and canceling the patent as against him. Upon final hearing the Circuit Court found as a fact against the other defendants that "the patent for the land was obtained by fraud, in that the defendant Samuel Brandt made entry of said lands and perfected the same in the interest of and for the use and benefit of the defendant William H. Bonsell, and not for his own sole use and benefit, and that the defendants William H. Bonsell and Sarah R. Henry were knowing of said fraud at the time of entry and proof, and when said patent was issued," and entered a decree setting aside and annulling said patent, and the deed of Brandt to Bonsell, and the mortgage by Bonsell and wife to the defendant Henry, so far as it related to said lands, at defendants' costs. The defendants Bonsell and Henry prosecute this appeal.

[1] The principal errors assigned and relied upon by the appellants are: That the court erred in finding that the land was fraudulently entered, and the patent thereto procured, by the defendant Brandt in the interest of and for the benefit of the defendant Bonsell, and that the mortgage of the defendant Henry was not in good faith.

These are purely questions of fact, to be determined from the testimony adduced upon the final hearing. The testimony is conflicting, and it would serve no useful purpose to recite or review it at much length, for it would interest no one but the immediate parties to this controversy, and would not establish a precedent for future cases. The defendant Brandt was a witness for the government, and he testified in substance:

"I worked for Bonsell in the summer of 1900, herding sheep; that about September of that year Bonsell asked me to take up a homestead for him, and offered me $150 if I would do so. I told him I did not want to do it, but he kept at me until I finally decided to do so. He showed me the corner stone, and located me, and I filed on the land in October. Bonsell paid the filing fee. Later he wanted me to change the filing, because one of the 80's was better land, and it was amended in May, 1902. I built a 'dugout' on the land, continued to work for Bonsell, and visited the land at least once every six months. As time went on I thought about it, and decided to keep the land and run some stock of my own; but Bonsell kept crowding me to keep my promises and turn the land over to him—said he would make trouble for me if I did not do so. I made commutation proof on the land in June, 1903. Bonsell furnished me $200 to pay for the land, and I deeded it to him in about two weeks after I made the proof. I never had the patent in my hands. It went to Bonsell. I never cultivated or improved the land, but built a 'dugout' upon it about 12 by 12, with a dirt roof, in which I lodged a few times and took meals there occasionally, and Mr. Castro, who was one of my witnesses when I proved up, took a meal there with me. During the time between when I entered the land and made the proof, Bonsell and myself had the use of this land. We let the stock run on it."

Bonsell denied that there was any agreement between him and Brandt whereby Brandt was to enter and procure the land for him, but admits that he made payments to Brandt from time to time from which Brandt might have paid the land office the government price for the land, and that Brandt deeded the land to him on July 6, 1903, some two weeks after the final proofs were made.

That Brandt never cultivated any part of the land is entirely clear; that he made no improvements thereon of any kind, except to construct a "dugout" of about 12 by 12 feet in size, with a dirt roof thereon, in which he lodged at times, and occasionally took his meals, is equally clear. In other words, the proof shows without any doubt that he never resided upon nor made any improvements upon the land, in the sense of making it a residence or home, and that this "dugout" was wholly uninhabitable as a place of residence.

It also appears that the defendant Mrs. Henry is an aunt of the defendant Bonsell; that she lived near the land in question, and that she and Bonsell both well knew of the extent of Brandt's occupancy and cultivation thereof; that she was interested with Bonsell as partner or joint owner in certain sheep and cattle transactions; that she sold out to him and took a mortgage in the sum of $20,000, in April, 1904, upon this and other lands and certain personal property to secure this indebtedness.

There is some other testimony, but none that materially changes the facts as above stated.

In McCaskill Co. v. United States, 216 U. S. 504, 510, 30 Sup. Ct. 386, 389 (54 L. Ed. 590), Mr. Justice McKenna, in speaking of the requirements of the law in a case quite similar to this in its facts, said:

"It may be well here to consider what the law requires. It gives the right of entry of 160 acres of land as a homestead, upon the condition, however, which must be established by affidavit, that the 'application is honestly and in good faith made for the purpose of actual settlement and cultivation and not for the benefit of any other person'; that applicant will honestly endeavor to comply with the requirements of settlement and cultivation, and does not apply to enter the same for the purpose of speculation. The purpose of the law, therefor, is to give a home, and to secure the gift the applicant must show that he has made the land a home. Five years of residence and cultivation for the term of five years he must show by two credible witnesses. Residence and cultivation of the land are the price that is exacted for its payment. It is in the power of the settler to modify the terms somewhat. He may substitute for a residence and cultivation for five years a residence and cultivation for not less than fourteen months; but he must make 'proof of settlement and of residence and cultivation for such period of fourteen months,' and pay the price provided by law for the land entered. This is known as the 'commutation' of his homestead entry."

See, also, Gilson v. United States, 185 Fed. 485, 107 C. C. A. 584.

Courts and Legislatures do not attempt to define with exactness what shall constitute fraud in all cases. Should they do so, "unscrupulous ingenuity" would devise some other method of committing it, and then claim that what was done was not within the definition. It is therefore left to be found from the facts and circumstances of each particular case.

[2] This case falls within the rule frequently held by this court, and recently in the case of De Laval Separator Co. v. Iowa Dairy Separator Co. (C. C. A.) 194 Fed. 423, where Judge Sanborn, speaking for the court, said:

"When the chancellor has considered conflicting evidence, and made his finding and decree thereon, they must be taken to be presumptively right; and unless an obvious error has intervened in the application of the law, or some serious mistake has been made in the consideration of the evidence, they must be permitted to stand."

A careful reading and consideration of the entire testimony in the case, all of which, except the affidavits and other documentary evidence, was taken orally in the presence of the court, fails to convince that any error of law or mistake of fact intervened in the consideration or decision by the Circuit Court of the questions presented, and we find no ground upon which to disturb the decree under review.

Some other errors are assigned, but it must suffice to say that we have carefully examined and considered the record relating to them, and reach the conclusion that they are not sufficient to warrant a reversal of the decree. It must therefore be affirmed, and it is accordingly so ordered.

Affirmed.